Roger BLAKESLEY, Appellant,

v.

STATE of Alaska, Appellee.

No. A–914.

Court of Appeals of Alaska.

Feb. 28, 1986.

---

**3.** Alaska Statute 22.20.020 pertains to disqualification of a judicial officer for cause.

Donald L. Surgeon, Asst. Public Defender, Bethel, and Dana Fabe, Public Defender, Anchorage, for appellant.

W.H. Hawley, Asst. Atty. Gen., Office of Special Prosecutions and Appeals, Anchorage, and Harold M. Brown, Atty. Gen., Juneau, for appellee.

Before BRYNER, C.J., and COATS and SINGLETON, JJ.

## OPINION

BRYNER, Chief Judge.

After entering a plea of no contest, Roger Blakesley was convicted of one count of misconduct involving a controlled substance in the third degree (sale of cocaine), in violation of AS 11.71.030(a)(1). Pursuant to *Cooksey v. State*, 524 P.2d 1251 (Alaska 1974), Blakesley reserved the right to appeal the trial court's denial of his motion to dismiss on grounds of entrapment. Superi-or Court Judge James R. Blair sentenced Blakesley to serve four years in prison, with two and one-half years suspended. Blakesley appeals, reasserting his entrapment claim and contending that his sentence is excessive. We affirm.

Blakesley was convicted of selling three grams of cocaine for $450 to Arthur Santamour, a police informant. Blakesley and Santamour had been close friends for many years prior to the sale. The sale occurred in Bethel shortly before Santamour was to be married. In support of his entrapment motion, Blakesley testified that he sold the cocaine to Santamour after Santamour specifically requested some cocaine for his wedding. Blakesley insisted that he had never sold drugs before and that he had refused many prior requests to sell Santamour cocaine. According to Blakesley, he obtained the cocaine solely to meet Santamour's request and sold it to Santamour at cost. Blakesley maintained that he agreed to sell to Santamour only because of their close friendship and Santamour's upcoming wedding.

■ On appeal, Blakesley contends, as he did below, that Santamour committed entrapment by taking undue advantage of his close personal friendship with Blakesley. Blakesley's version of the sale, however, is not entirely uncontroverted.

In response to Blakesley's testimony, the state called Arthur Santamour to testify on the issue of entrapment. According to Santamour, he first learned that Blakesley had access to cocaine from Blakesley's own statements. Blakesley had told Santamour that he was receiving half an ounce of cocaine per week as partial compensation for driving a taxicab. Although Blakesley, at the entrapment hearing, acknowledged making this statement to Santamour, he claimed that the statement had been untrue. Santamour, however, had no reason to disbelieve this statement, and, according to Santamour's testimony, it was this statement that prompted him to ask Blakesley for cocaine.

Santamour specifically denied asking Blakesley for cocaine as a wedding gift. He claimed that he was aware Blakesley had a quarter ounce of cocaine and that he merely told Blakesley he would be too busy with his wedding to look around for cocaine and was willing to buy some from Blakesley, as long as Blakesley already had it available. Santamour also denied pursuing Blakesley to obtain drugs.

Santamour further testified that he had previously made arrangements to obtain a quarter ounce of cocaine from Blakesley, but that the transaction fell through because Blakesley could not contact his supplier in Anchorage. Santamour insisted that he and Blakesley had both previously been involved in the sale of illicit drugs. A tape recording of the drug transaction between Santamour and Blakesley indicated that, at the time of the sale, Blakesley told Santamour he had additional cocaine available and that he was willing to hold it for Santamour if Santamour wanted him to. Santamour told Blakesley to go ahead and sell it to somebody else if the opportunity arose.

After considering the totality of the evidence on the issue of entrapment, Judge Blair found that Santamour had not sought out or targeted Blakesley in order to have him arrested, that Blakesley had been the first to bring up the subject of cocaine, and that Santamour had used no unusual inducements or appeals to friendship to convince Blakesley to sell him cocaine. Based on these findings, Judge Blair concluded that Santamour's conduct did not amount to entrapment.

Our review of the record convinces us that Judge Blair's findings are supported by substantial evidence and are not clearly erroneous. *See Bush v. State*, 678 P.2d 423, 424 (Alaska App.1984). We are further satisfied that Judge Blair did not err in concluding, based on his factual findings, that Santamour's conduct did not "[fall] below an acceptable standard for fair and honorable administration of justice." *Bruce v. State*, 612 P.2d 1012 (Alaska 1980). *See also Coffey v. State*, 585 P.2d 514, 521 (Alaska 1978) (imposing on the accused the burden of establishing entrapment by a preponderance of the evidence); AS 11.81.450. We thus hold that the trial court properly rejected Blakesley's entrapment defense.

■ Blakesley additionally argues that his sentence is excessive. He points out that this was his first felony conviction and that the case involved no profit and was an isolated sale to a friend of only a small quantity of cocaine. Blakesley claims that, in imposing a sentence of four years with two and one-half suspended, Judge Blair in effect ignored these circumstances, electing instead to place exclusive emphasis on the sentencing goals of deterring other offenders and expressing community condemnation for the offense.

The sentencing record does not support Blakesley's contention. Although Judge Blair did elect to give emphasis in sentencing to the goals of deterrence and community condemnation, he also appears to have given careful consideration to the circumstances surrounding Blakesley's offense. There is evidence in the record to support the conclusion that Blakesley had previously engaged in the sale of illicit drugs and that, on the occasion of his sale to Santamour, he had additional cocaine, which he planned to sell to other individuals. Blakesley has previously been convicted of at least six misdemeanors, including one drug-related offense, and he appears to have been extensively involved in using various controlled substances.

■ Misconduct involving a controlled substance in the third degree is a class B felony, punishable by a maximum term of ten years' imprisonment. AS 11.71.030(c); AS 12.55.125(d). For a second felony offender, the presumptive term is four years. AS 12.55.125(d)(1). Here, Santamour, a first-felony offender, has been sentenced to serve an unsuspended term of imprisonment of one and one-half years. This sentence does not violate the general rule that, barring exceptional circumstances, a first-felony offender cannot be given a longer sentence than the presumptive sentence for

a second-felony offender. *See Austin v. State*, 627 P.2d 657 (Alaska App.1981). Further, both the Alaska Supreme Court and this court have consistently upheld similar sentences in comparable cases involving first offenders. *See, e.g., LeDuff v. State*, 618 P.2d 557 (Alaska 1980); *Elliott v. State*, 590 P.2d 881 (Alaska 1979); *Dana v. State*, 623 P.2d 348 (Alaska App. 1981); *Rosa v. State*, 627 P.2d 658 (Alaska App.1981). Having independently reviewed the entire sentencing record, we conclude that Blakesley's sentence is not clearly mistaken. *McClain v. State*, 519 P.2d 811, 813–14 (Alaska 1974).

The conviction and sentence are AFFIRMED.